**ALD-105**                                                                 **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4048
_____

DEBRA-ANN WELLMAN,
                                        Appellant

v.

DUPONT DOW ELASTOMERS L.L.C.
t/a, Dupont High Performance Elastomers L.L.C.
_____

DEBRA-ANN WELLMAN,
                                        Appellant

v.

THE DUPONT COMPANY
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Nos. 05-cv-00278 and 05-cv-00279)
District Judge:  Honorable Sue L. Robinson
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
February 3, 2011

Before: SCIRICA, HARDIMAN and VANASKIE, Circuit Judges

(Opinion filed: February 18, 2011)

_____

OPINION
_____

PER CURIAM

Debra-Ann Wellman, proceeding pro se, appeals the District Court's order granting summary judgment in favor of Dupont Dow Elastomers LLC ("DDE") and DuPont Company ("DuPont") (collectively, "defendants"). For the reasons below, we will affirm.

I.

DuPont employed Wellman as an administrative assistant from 1978 to 1988 and from 1992 to 1996 when she accepted an offer of employment with DDE. In 2001, Wellman claimed that her supervisor, Paul Graves, and an administrative assistant, Mary Ann Price, began harassing her and created a hostile work environment. She claimed that Graves sexually harassed her, and that she was subjected to threats and abuse. She stopped working on February 11, 2002. DDE investigated Wellman's claims and determined that she had not been the victim of harassment or abuse. It did warn Graves to avoid showing Price any favoritism and to "closely monitor [his] remarks."

Wellman sought psychological treatment beginning on February 11, 2002, until November 2002. Wellman was diagnosed with adjustment disorder and stress about her work. The psychologist also determined that Wellman was capable of returning to work, but that she should be moved and be assigned a different supervisor. Another doctor

2

prescribed her Ambien and Klonopin for adjustment disorder with depressed and anxious mood. A neurologist determined that she did not have any neuropsychological impairments and that she could return to work.

Wellman's Employee Assistance Counselor ("EAC") requested that she undergo an independent psychological and psychiatric evaluation. The doctors concluded that she exhibited "traits of borderline, hysterical, and narcissistic personality," but that she was "not psychologically disabled." The psychiatrist recommended that she not return to her position at DDE.

DDE's human resources met with Wellman in August 2002, after she was cleared to return to work. DDE informed her that she could continue in her current position or apply for an incapability pension. After an extension, Wellman failed to attend her return-to-work meeting, and on August 26, 2002, she left a voicemail stating that she was unwilling to return to work. DDE terminated her employment.

Wellman filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against DuPont and DDE based on retaliation, gender, and disability. The EEOC dismissed the charges in February 2005 and informed her of her right to sue. She then filed two identical complaints in the District Court pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and the Americans with Disability Act ("ADA"), one each against DuPont and DDE. DuPont and DDE filed motions for summary judgment, which the District Court granted on September 14, 2010. Wellman filed a timely notice of appeal.

3

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. In reviewing a District Court order granting summary judgment, we apply the same test that the District Court applied. Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. at 232; Fed. R. Civ. P. 56(a). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." Saldana, 260 F.3d at 232 (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).

## III.

### A.    DuPont

In the employment discrimination context, a parent corporation will be held responsible as an employer only where it and the subsidiary are "'so interrelated and integrated in their activities, labor relations and management' that we should pierce the corporate veil." Marzano v. Computer Sci. Corp., 91 F.3d 497, 514 (3d Cir. 1996) (citation omitted). Wellman conceded that DDE was her employer during the time the alleged conduct occurred. However, she argued that DuPont is liable for the actions of its subsidiaries, and that it was responsible, through the EAC, for her termination. The District Court concluded that there was no evidence showing that DuPont's and DDE's

4

operations were interrelated. It noted that Wellman did not claim that Dupont and DDE shared common management, ownership, or financial management. DDE alone paid her wages, and DuPont was not consulted about her termination. Finally, the District Court considered that the National Labor Relations Board has determined that DuPont and DDE are not alter egos of each other. In re DuPont Dow Elastomers L.L.C., 332 N.L.R.B. 1071 (2000). We agree that Wellman failed to set forth facts showing that there is a genuine issue for trial regarding DuPont's status as her employer. See Saldana, 260 F.3d at 232. Accordingly, the District Court properly granted summary judgment in favor of DuPont.

B.  DDE

1. Retaliation

Wellman first claims that DDE terminated her in retaliation for filing harassment complaints. To establish a prima facie case of retaliation, Wellman must present sufficient evidence to establish that: (1) she was engaged in protected conduct; (2) an adverse action was taken; and (3) there is a causal link between the protected conduct and the adverse action. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). Once a prima facie case is established, the burden shifts to DDE to present a non-retaliatory explanation for terminating Wellman. Id. at 920 n.2. Wellman must then establish that there is sufficient evidence for the factfinder to "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v.

5

Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

The District Court concluded that Wellman failed to establish a prima facie case of retaliation because she could not demonstrate a causal link between her filing of the harassment charges with the EEOC and her termination. Wellman never filed an internal sexual harassment charge, and filed her EEOC charge only eleven days before her termination. Wellman maintains that even if DDE did not have notice of her EEOC charge, she had expressed her concerns about Graves and Price to human resources before her termination. However, DDE paid her short-term disability benefits for seven months after she spoke to human resources. At her August 2002 meeting with the EAC and human resources, she was offered her previous position or the option of applying for an incapability pension. She admits the parties also discussed her being moved to a different supervisor within a few months of her return to work. DDE also gave her an extension of one week to make her decision, but she did not respond, nor did she attend her final return-to-work meeting, and was eventually terminated for job abandonment. The record shows that she was aware that if she did not return to work, she would be terminated. Contrary to her retaliation claim, DDE also informed DuPont that it did not object to her applying for a new position with DuPont. Accordingly, we agree with the District Court that Wellman failed to show facts supporting a prima facie case of retaliation.

Even assuming that Wellman established a prima facie case of retaliation, DDE offered a non-discriminatory reason for terminating Wellman, namely that she refused to

attend her return-to-work meeting. The District Court found that Wellman failed to rebut DDE's legitimate reason. She admitted that she had received disability benefits for almost seven months and refused to attend her scheduled meetings. Accordingly, the District Court properly concluded that there were no genuine issues of material fact, and, as such, did not err in granting summary judgment on the retaliation claim.

### 2. Hostile Work Environment

Wellman also claims that she was subjected to a hostile work environment in violation of Title VII. To establish such a claim, Wellman must prove that: (1) she suffered intentional discrimination based on her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) a reasonable person in the same position and protected class would have been detrimentally affected; and (5) respondeat superior liability exists. See West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). Courts are to consider the frequency and severity of the discriminatory conduct, and determine whether it is "physically threatening or humiliating, or a mere offensive utterance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). "Teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory" behavior. Id. at 788.

The District Court acknowledged the evidence showing that Wellman found her workplace to be hostile. However, it concluded that her unsupported allegations alone did not establish a hostile work environment claim based on gender. Furthermore, the court properly held that, even if true, Graves' alleged conduct does not constitute

7

harassment pervasive enough to "alter the condition of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). She alleged sporadic incidences over six months; she did not allege or establish a pattern of conduct and the alleged conduct was not consistently related to her gender. The District Court thus correctly concluded that summary judgment was warranted on Wellman's hostile work environment claim.

### 3. ADA

Finally, Wellman claims that she was discriminated against in violation of the Americans with Disability Act ("ADA"). To bring a claim under the ADA, Wellman must show that she: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a history of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1). First, Wellman's treating psychologist noted that she did not have any serious mental illness or a history of such. Second, there is no indication that her condition limits a major life activity. Finally, there is no evidence that DDE considered Wellman as having a disability. She had been cleared to return to work, and DDE offered her her former position. Accordingly, we agree with the District Court's grant of summary judgment on Wellman's claim under the ADA.

### IV.

For the foregoing reasons, we will affirm the District Court's judgment. Wellman's motion for counsel is denied.